PUBLIC VERSION
Business Confidential Information Removed From Brackets

I.   **SUMMARY**

The Office of United States Trade Representative (USTR) has prepared these remand results pursuant to the *Remand Order* of the U.S. Court of International Trade (the Court) issued on September 1, 2022.[1]  These remand results concern the U.S. Trade Representative's determination not to reinstate the 10-digit exclusion covering drinking water cooler products entering the United States under the Harmonized Tariff Schedule of the United States (HTSUS) subheading 8418.69.0120 (Water Cooler Exclusion).  As set forth in detail below, pursuant to the *Remand Order*, USTR has reconsidered its decision not to reinstate the exclusion and upon reconsideration of the record, has further determined not to reinstate the Water Cooler Exclusion.

II.   **BACKGROUND**

Effective July 6, 2018, the U.S. Trade Representative (Trade Representative) imposed additional duties on goods of China with an annual trade value of approximately $34 billion as part of the action in the Section 301 investigation of China's acts, policies, and practices related to technology transfer, intellectual property, and innovation.  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation* 83 Fed. Reg. 28,710 (U.S. Trade Representative June 20, 2018).  In subsequent notices, the Trade Representative modified the action in the Section 301 investigation of China's acts, policies, and practices related to technology transfer, intellectual property, and innovation by excluding certain products from additional duties in multiple tranches.  Exclusions were product specific, covering certain products within a 10-digit subheading or an entire HTSUS 10-

---

[1] *See DS Services of America, Inc., DBA Primo Water North America, Inc., v. United States*, Ct. No. 22-157, (CIT September 1, 2022), (*Remand Order*).

digit subheading.  The Trade Representative initiated the exclusion process in July 2018 and granted an initial set of exclusions in December 2018, including the 10-digit Water Cooler Exclusion.  *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 67,463 (U.S. Trade Representative December 28, 2018).  On December 23, 2019, USTR extended numerous exclusions for twelve months, including the Water Cooler Exclusion.  *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 70,616 (U.S. Trade Representative December 23, 2019).  The Water Cooler Exclusion subsequently expired on December 28, 2020.

On October 8, 2021, USTR announced that it was considering the reinstatement of certain exclusions and invited the public to comment on whether to reinstate particular exclusions that were previously extended, including the Water Cooler Exclusion.  *Request for Comments on the Possible Reinstatement of Certain Exclusions in the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 86 Fed. Reg. 56,345 (U.S. Trade Representative October 8, 2021) (*October 2021 Request for Comments*).

USTR announced that it would evaluate the possible reinstatement of each of the previously extended exclusions, including the Water Cooler Exclusion, on a case-by-case basis.  The focus of the evaluation was whether, despite the imposition of additional duties beginning in September 2018, the particular product remained available only from China.  *Id.*  In addition, USTR also considered whether or not reinstating the exclusion would impact or result in severe economic harm to the commenter or other U.S. interests, as well as the overall impact of the exclusions on the goal of obtaining the elimination of China's acts, policies, and practices

**PUBLIC VERSION**
Business Confidential Information Removed From Brackets

covered in the Section 301 investigation. *Id.* USTR opened a 50-day docket for public comments on October 12, 2021, which closed on December 1, 2021. *Id.* As noted in the *October 2021 Request for Comments*, to be assured of consideration, written comments were required to be submitted by December 1, 2021. *Id.*

During the public comment period, USTR received a total of sixteen comments regarding the possible reinstatement of the Water Cooler Exclusion. In support of reinstating the exclusion, USTR received fifteen comments, including a comment from Plaintiff, DS Services of America, Inc. d/b/a Primo Water North America, Inc. (Primo).[2] A comment opposing reinstatement of the exclusion was filed by Natural Choice Corporation (Natural Choice), which claimed to produce water coolers domestically and asserted that reinstating the exclusion would harm U.S. producers.[3]

On March 28, 2022, USTR announced the determination of the Trade Representative to reinstate certain previously extended exclusions. Based on the record before the agency, the Trade Representative determined not to reinstate the Water Cooler Exclusion. *Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 17,380 (U.S. Trade Representative March 28, 2022).

On May 25, 2022, Primo filed a Summons and Complaint challenging the Trade Representative's decision not to reinstate the Water Cooler Exclusion (ECF Nos. 1 and 2). The Complaint called into question Natural Choice's assertion that it produces water cooler products covered by the Water Cooler Exclusion, noting that water coolers advertised by Natural Choice

---

[2] *See* Comments of DS Services of America, Inc. dba Primo Water North America (USTR-2021-0019-59892).
[3] *See* Comments of Natural Choice Corporation (USTR-2021-0019-60505).

are not water coolers, but rather water filters, which are classified under a different tariff classification. Subsequent to the filing of Primo's Complaint, on July 15, 2022, USTR received a letter from Natural Choice indicating that it wished to withdraw its December 1, 2021 comment opposing the reinstatement of the Water Cooler Exclusion.[4]

In light of Primo's allegation and Natural Choice's subsequent request to withdraw its comment, USTR requested a voluntary remand to consider whether the circumstances might warrant an opening of the record to consider Natural Choice's request, and reconsideration of the Trade Representative's determination. On September 1, 2022, the U.S. Court of International Trade granted USTR's request for a voluntary remand.

### III. ANALYSIS

#### a. Natural Choice's Request to Withdraw its Comment

In order to provide USTR with a complete and accurate record for reconsideration, on September 26, 2022, USTR requested Natural Choice to provide further explanation of its request to withdraw its December 1, 2021 comment, and to clarify whether Natural Choice manufactured products were covered by the Water Cooler Exclusion at the time the comment was submitted.[5]

In its November 21, 2022[6] response, Natural Choice confirmed that it domestically produced water coolers that, if imported, would be covered by the Water Cooler Exclusion. Regarding its reasons for requesting a withdraw, Natural Choice replied that it had received "communications from several competitors questioning Natural Choice's standing to submit

---

[4] *See* Letter From Natural Choice Corporation Requesting Withdraw of its December 1, 2021 Comment (July 14, 2022).
[5] *See* Letter from USTR to Natural Choice Corporation (September 26, 2022).
[6] *See* Natural Choice Corporation Submission in Response to USTR Request re *DS Services of America, Inv. v. United States et al.* (November 21, 2022).

4

comments regarding the Water Cooler Exclusion based on their views of the tariff classification of Natural Choice's domestically produced products" and Natural Choice "did not wish to defend its standing to submit its comment against larger competitors." Moreover, Natural Choice noted that its business is largely focused on filtered water coolers, and less on bottled water coolers; and accordingly, that reinstatement of the Water Cooler Exclusion would have a declining impact on its business.

 After considering Natural Choice's request and subsequent response to USTR's September 2022 letter, USTR is declining Natural Choice's July 15, 2022 request to withdraw its comment. As noted above, Natural Choice has confirmed the accuracy of the December 2021 comment. Moreover, Natural Choice's request appears to be based solely on a revaluation of the company's decision to submit its December 2021 comment and comes more than seven months after the closing of the public comments docket and several months after the publication of the Trade Representative's final decision. To withdraw a comment and allow a submitter to amend the record so long after the closing of the docket based simply on a submitter's reevaluation of its decision to submit a comment could result in a perpetual public comment period that would lead to administrative inefficiency and a lack of predictability.

 Accordingly, USTR rejects Natural Choice's request to withdraw its comment. Therefore, in reconsidering the possible reinstatement of the Water Cooler Exclusion, USTR will consider Natural Choice's December 2021 comment as part of the record. In any event, however, as explained in further detail below, based on the analysis in this remand determination, whether Natural Choice's comment is considered does not change the outcome of this remand.

 b. **Comments Received on the Public Docket**

**PUBLIC VERSION**
Business Confidential Information Removed From Brackets

USTR received sixteen comments concerning the possible reinstatement of the Water Cooler Exclusion. One domestic producer[7] submitted a comment opposing reinstatement, two comments were submitted by industry organizations[8] supporting reinstatement and thirteen comments were submitted by importers supporting reinstatement. Of the thirteen companies who submitted supporting comments, eleven submitted complete and usable data. One company provided incomplete data,[9] and one company's data included apparent errors that called into question the reliability of the import data provided.[10] The companies who submitted comments ranged in size. Reported gross revenues from seven[11] companies supporting reinstatement were less than $100 million and reported gross revenues from the remaining five[12] companies supporting reinstatement were greater than $100 million.[13]

c. **Determination**

As outlined in USTR's *October 2021 Request for Comments,* in considering whether to reinstate certain previously extended exclusions, the focus of the evaluation would be whether, despite the imposition of additional duties in September 2018, the particular product remains available only from China. In addressing this factor, commenters were requested to address the following: (1) Whether the particular product and/or a comparable product is available from

---

[7] *See* Comments of Natural Choice Corporation (USTR-2021-0019-60505).
[8] *See* Comments of Retail Industry Leaders Association (USTR-2021-0019-59381) (supporting the reinstatement of all previously extended exclusions, including the Water Cooler Exclusion) and International Bottled Water Association (USTR-2021-0019-61096).
[9] [                                                                                                     ]
[10] [                                                                                                    ]
[11] [


]
[12] [


]
[13] [                                                                                               ]

sources in the United States and/or in third countries; (2) Any changes in the global supply chain since September 2018 with respect to the particular product or any other relevant industry developments; (3) The efforts, if any, the importers or U.S. purchasers have undertaken since September 2018 to source the product from the United States or third countries; and (4) Domestic capacity for producing the product in the United States. USTR also stated that it would consider whether reinstating an exclusion would impact or result in severe economic harm to the commenter or other U.S. interests, including the impact on small businesses, employment, manufacturing output, and critical supply chains in the United States, as well as the overall impact of the exclusions on the goal of obtaining the elimination of China's acts, policies, and practices covered in the Section 301 investigation.

Based on the record before the Trade Representative in this redetermination, the Trade Representative has determined that the Water Cooler Exclusion does not warrant reinstatement.

1. **The Record Shows Availability of Products From Sources Other Than China**

The record shows that products covered by the Water Cooler Exclusion do not remain available only from China. The record shows that since 2018 there have been at least modest shifts in global supply chains for products covered by the Water Cooler Exclusion, with greater availability from third-country and domestic sources. According to official U.S. import data, the volume of imports under subheading 8418.69.0120 increased by more than 42 percent from 2018 to 2021, with the share of imports from third country sources increasing from 11 percent of total imports in 2018 to 15 percent of total imports in 2021.[14] In 2021, following the expiration of the

---

[14] U.S. Census Data, imports for consumption under 8418.69.0120 (2018-2021), available at, https://dataweb.usitc.gov/

exclusion, the quantity of imports from third countries increased by 68 percent, while imports from China decreased by 3 percent.[15]

Additionally, submitters' comments reported imports and production capabilities in several third countries, including South Korea, Malaysia, Italy, Mexico, and Poland.[16]  Official U.S. import data show that these countries, along with Canada and the United Kingdom, are among the largest third country sources.[17]  Moreover, some of these sources have increased significantly since 2018, with the quantity of imports from Malaysia, South Korea, and Mexico, the largest third country sources, increasing by nearly 100 percent and growing from 9 percent of total imports to 12 percent of total imports.[18]

Of the eleven companies that supported reinstatement and provided usable import data, four reported purchases from third country sources, with reported purchases more than doubling in the first half of 2021 (following the expiration of the exclusion).[19]  A fifth company did not report imports from third countries during the 2018-2020 period, but noted that they were in the process of shifting the production of goods covered by the exclusion to a third country.[20]

The record also shows some availability from domestic sources.  At least one commenter indicated that they had shifted production of some lines from China to the United States.[21] Confidential data indicates that this shift accounted for about [     ] of what the company purchased

---

[15] U.S. Census Data.
[16] [                                                                                                                ]
[17] U.S. Census Data.
[18] U.S. Census Data.
[19] [                                                                                    ]
[20] [                                                            ]
[21] *See* Comments of Waterlogic Commercial Products LLC (USTR-2021-0019-60711).

from China in 2018. As noted above, Natural Choice also reported some capacity to produce in the United States.[22]

Regarding efforts to source the product from alternative sources, several companies reported that they struggled to shift production due to cost concerns, a lack of capacity outside of China, and the necessary time to certify new suppliers.[23] Others reported that their efforts had resulted in shifts to third countries or were in the process of shifting to third countries.[24] A few companies either failed to provide a response or simply noted the lack of availability outside of China.[25] The record indicates that smaller companies had more success in shifting sourcing to domestic or third country sources. Of the seven companies with gross revenues smaller than $100 million, five[26] reported their efforts and of those five, [         ][27] current or pending shifts to third countries. Of the five larger companies, [

][28] The data reported by the companies show that the seven companies with gross revenues below $100 million accounted for more than [                                                         ]

---

[22] *See* Comments of Natural Choice Corporation (USTR-2021-0019-60505) (stating, [

]

[23] [

]

[24] [

]

[25] [

]

[26] [

]

[27] [

]

[28] [                                    ]

9

PUBLIC VERSION
Business Confidential Information Removed From Brackets

In sum, the record shows that while China continues to be the dominant source for imports, there is increasing availability from third country sources and additional capacity in third countries is coming online. The significant increase in imports from third countries during the first six months of 2021 would indicate an ability for capacity in third countries to continue to increase. The record also shows that following the expiration of the exclusion there were limited shifts in production to the United States. These additional sources may not currently meet all of U.S. demand,[29] but USTR did not state that this factor, standing alone, would warrant a reinstatement. Rather, as noted, the notice stated USTR would examine whether the product remains available only from China. And here, the record demonstrates that the products covered by the exclusion are generally available outside of China and sourcing from alternative sources is increasing.

2. **The Record Demonstrates That Not Reinstating The Exclusion Will Not Cause Severe Economic Harm**

The record demonstrates that not reinstating the exclusion will not cause severe economic harm to commenters or other U.S. interests. As noted, of the twelve companies supporting reinstatement, five reported gross revenues greater than $100 million. As a percentage of their reported gross revenues, their reported imports of products under the exclusion accounted for [   ] percent. This would indicate that the five larger companies are more diverse and only a small share of their business depends on products imported under the exclusion. The seven smaller companies appear to be less diverse and more dependent on the exclusion, with imports under the exclusion in 2020 accounting for [   ] percent of their reported gross revenues.

Data reported by the companies shows that following the expiration of the exclusion at the end of 2020, the five larger companies reported a [        ] increase in gross revenue in the first

---

[29] *See* Comments of International Bottled Water Association (USTR-2021-0019-61096), noting that the U.S. is dependent on China, as domestic or third country sources cannot meet demand.

half of 2021, compared to the first half of 2020.  This increase exceeds the increase in gross revenues experienced by the companies from 2019 to 2020 [            ].  However, increasing gross revenues following the expiration of the exclusion was not limited to the larger companies.  The seven companies with reported gross revenues below $100 million showed gross revenues in the first half of 2021 that were [        ] higher than in the first half of 2020.  This was only slightly lower than the [      ] increase experienced by these companies in 2020.

Moreover, the increases in gross revenues in 2021 occurred when companies were increasing purchases from China.  Despite the expiration of the exclusion, in the first half of 2021 the five large companies [                                ] The data reported by the seven companies with gross revenues below $100 million show that in the first half of 2021 they [                            ] The increases in purchases of product from China following the expiration of the exclusion would indicate that the additional duties are not causing the companies severe economic harm.

Claims of decreases in employment also did not establish severe economic harm.  Of the eleven companies supporting reinstatement that provided complete data, only three claimed drops in employment were directly related to the additional duties.[30]  Two companies attributed the job losses to [                    ] resulting from the additional duties.[31]  However, both of these companies reported [

][32]  A third company,

---

[30] [                                                                    ]

[31] [                                        ]

[32] [                            ]

11

[            ] simply stated that it reduced its workforce by [     ] as a result of the additional duties, but did not explain.[33] However, [                         ] the quantity of its purchases of water coolers from China in 2020 and in the first half of 2021.

Finally, in response to USTR's request that commenters explain how reinstating or not reinstating the exclusion would impact or cause severe economic harm, submitted comments failed to sufficiently demonstrate a connection between a specific alleged harm that would be directly attributable to USTR not reinstating the exclusion. For example, many of the comments only refer to general harm. For instance, [

                                                                                         ][34] However, as imports under the exclusion account for less than [

                                                                                         ] to the company or what specific harm the additional duties might cause. Some responses were speculative[35] and several companies pointed to several causes of harm.[36] For others, the harm alleged simply did not constitute severe economic harm.[37]

---

[33] [                                                                    ]
[34] [




                                                                    ]
[35] [


                                                                    ]
[36] [


                                                                    ]
[37] [


                              ]

12

In sum, submitted comments failed to establish that not reinstating the exclusion would cause severe economic harm. While a few companies reported declines in employment, it is not clear that these declines are attributable to the additional duties. Additionally, the reported gross revenues, which continued to increase for most companies at similar levels before and after the expiration of the exclusion, appear to contradict claims that the additional duties were causing severe economic harm.

IV. **FINAL RESULTS OF REDETERMINATION**

While the availability of products from sources outside of China appears to be limited, the record demonstrates that sources outside of China have increased since 2018. Total imports have grown by 50 percent, but imports from third countries have grown faster and have become a larger share of total imports. Moreover, third-country imports grew significantly in the first six months after the exclusion expired. While alternative sources, including domestic sources, may not be sufficient to meet domestic demand, the record does not indicate that the additional duties are impacting or resulting in severe economic harm to U.S. companies or other interests. Accordingly, based on this record, the Trade Representative has determined not to reinstate the Water Cooler Exclusion.

_____
Juan A. Millan
Assistant U.S. Trade Representative for Monitoring and Enforcement