# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| DS SERVICES OF AMERICA, INC., d/b/a PRIMO WATER NORTH AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; KATHERINE TAI, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; CHRIS MAGNUS, U.S. CUSTOMS & BORDER PROTECTION COMMISSIONER, <br><br> Defendants. | | Court No. 22-00157 |

## PLAINTIFF'S COMMENTS IN OPPOSITION TO REMAND DETERMINATION

David E. Bond
Frank Hogue
Cristina Cornejo

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

February 27, 2023

**TABLE OF CONTENTS**

I.     Introduction............................................................................................................1

II.    USTR Improperly Rejected Natural Choice's Request to Withdraw its Comment........2

III.   USTR's Attempt to Justify Its Decision Using New Import Data Should Be
       Rejected.............................................................................................................4

       A.    USTR Relies on Improper Post-Hoc Rationalization to Explain Its
             Decision Not to Reinstate the Water Cooler Exclusion......................................4

       B.    USTR Failed to Consider Relevant Data in Making its Factual
             Determinations Regarding U.S. Import Trends. ..................................................6

IV.    USTR Misapplied Its Own Factor in Reaching its Determination ...............................8

V.     Conclusion ...........................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bonney Forge Corp. v. United States*,
    560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022) ................................................................6

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)......................................................................................................9

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020)..................................................................................................5

*In re Section 301 Cases*,
    570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) .........................................................4, 5, 9

*Mid Continent Nail Corp. v. United States*,
    846 F.3d 1364 (Fed. Cir. 2017)....................................................................................9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).............................................................................................2, 3, 7, 8

## STATUTES AND REGULATIONS

5 U.S.C. § 553(b) ..................................................................................................................9

5 U.S.C. § 706(2)(A)..............................................................................................................2

Trade Act of 1974 § 301 (19 U.S.C. §§ 2411–2420)............................................................1

## OTHER AUTHORITIES

*Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices Related to
    Technology Transfer, Intellectual Property, and Innovation*,
    87 Fed. Reg. 17380 (Mar. 28, 2022)............................................................... passim

*Request for Comments on the Possible Reinstatement of Certain Exclusions in the Section 301
    Investigation of China's Acts, Policies, and Practices Related to Technology Transfer,
    Intellectual Property, and Innovation*,
    86 Fed. Reg. 56,345 (Oct. 8, 2021)............................................................................8

U.S. Census Data, imports for consumption under 8418.69.0120 (2018-2021),
     available at https://dataweb.usitc.gov/ ...................................................................6

## I.     INTRODUCTION

Plaintiff DS Services of America, Inc., d/b/a Primo Water North America ("Plaintiff" or "Primo Water") submits these comments in opposition to the Office of United States Trade Representative's ("USTR") Remand Results.  *See* Remand Results, ECF No. 29, 30 (Dec. 14, 2022) ("*Remand Results*").

USTR requested a voluntary remand to "reconsider" its decision not to reinstate a previously granted exclusion from duties under Section 301 of the Trade Act of 1974 (19 U.S.C. §§ 2411–2420) to imports from the People's Republic of China ("China") of water coolers classified under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 8418.69.0120 ("Water Cooler Exclusion").  *See* Defs.'s Unopposed Mot. for Voluntary Remand, ECF No. 23 (Aug. 31, 2022) ("Defs.'s Mot. for Remand"); *see also Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 17380 (Mar. 28, 2022) (*"Reinstatement Notice"*).  USTR did so because the only domestic producer to object to the reinstatement of the exclusion, Natural Choice Corporation ("Natural Choice") "request{ed} to withdraw its comment opposing reinstatement of the exclusion . . . ."  *See* Defs.'s Mot. for Remand at 6.  The Court remanded the matter to USTR "for reconsideration of the final decision not to reinstate the exclusion at issue in this case . . . ."  *See* Order, ECF No. 24 (Sept. 1, 2022).

USTR's determination not to reinstate the Water Cooler Exclusion in its *Remand Results* (1) erroneously fails to consider that the only objection to the reinstatement of the exclusion, and the only possible justification from the original administrative record for USTR's decision not to reinstate the exclusion, was withdrawn; (2) improperly relies on post-hoc rationalization and fails to address the important fact that the absolute values in the U.S. import data do not support USTR's

conclusion that there have been meaningful changes in the global supply chain since September 2018 for water coolers or that water coolers are more available from sources other than China and; (3) considers the inverse of a factor it established for reinstating exclusions to Section 301 duties without providing notice to commenting parties, thereby failing to consider relevant factors and follow the statutory requirements of the Administrative Procedure Act ("APA").

**II.    USTR IMPROPERLY REJECTED NATURAL CHOICE'S REQUEST TO WITHDRAW ITS COMMENT.**

In the *Remand Results*, USTR's decision to reject Natural Choice Corporation's ("Natural Choice") request to withdraw its comment opposing the reinstatement of the Water Cooler Exclusion, "runs counter to the evidence before the agency" rendering its decision arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also* 5 U.S.C. § 706(2)(A). USTR's decision to "reject{} Natural Choice's request to withdraw its comment" was based on USTR's unsupported characterization of Natural Choice's statements in a follow-up letter to USTR regarding its withdrawal request. USTR claims that Natural Choice "confirmed that it domestically produced water coolers, that, if imported, would be covered by the Water Cooler Exclusion." *Remand Results* at 4–5. A review of the evidence on the record, however, demonstrates that USTR failed to consider relevant evidence from Natural Choice's letter and the Complaint that ran counter to its factual determination.

As evidence that Natural Choice makes water coolers, USTR pointed to a letter in which Natural Choice admitted that it does not know what tariff classification applies to its products. In its letter, Natural Choice stated that it "is a leading designer, manufacturer, and distributor of water coolers, water filters and related accessories" and that it "disagrees with the statement in Paragraph 22 of the Complaint that it does not produce any water coolers that, if imported, would be eligible for the 'Water Cooler Exclusions' . . . as that term is defined in the Complaint." Letter from

ArentFox Schiff to USTR Re: *Natural Choice Corporation Submission in Response to USTR Request re DS Services of America, Inc. v. United States et al.* (Nov. 21, 2022), P.R. 19 at 1 ("*Natural Choice Letter*").  However, in the same letter Natural Choice explained that it "does not import fully assembled water coolers" and thus that "Natural Choice's products have not been the subject of U.S. Customs and Border Protection tariff classification rulings, nor has Natural Choice filed customs entries declaring the tariff classification of these products."  *Id.* at 2.  Thus, at best, Natural Choice, and by extension USTR, is speculating that Natural Choice's water coolers would be eligible for the Water Cooler Exclusion.

Meanwhile, as USTR itself noted in its request for a voluntary remand, there is evidence on the record that Natural Choice does not make water coolers.  *See* Defs.'s Mot. for Remand at 5–6.  In particular, Primo Water provided significant contradictory evidence that "the products advertised by Natural Choice Corporation on its website are water filters not water coolers{,}" which are "properly classified under a different tariff classification."  *See* Compl. ¶22.  Thus, USTR's factual determination that Natural Choice does make water coolers "runs counter to the evidence before the agency" and was arbitrary. *Motor Vehicle Mfrs.*, 463 U.S. at 43.

Most importantly, USTR's subsequent decision to reject Natural Choice's request to withdraw its comment regarding the Water Cooler Exclusion and to "consider Natural Choice's December 2021 comment as part of the record" was improper.  *Remand Results* at 5.  USTR said it "consider{ed} public comments submitted in response to the October 8 notice. . . ." *Reinstatement Notice*, 87 Fed. Reg. at 17381.  Accordingly, on remand USTR should have considered Natural Choice's request to withdraw its comment.  Natural Choice's comment was the only comment from a domestic producer on the record opposing reinstatement of the Water Cooler Exclusion.  By withdrawing its comment, Natural Choice removed the only possible

justification for USTR's initial decision not to reinstate the Water Cooler Exclusion.  Thus, as part

of "consider{ing} public comments submitted in response to the October 8 notice{,}" USTR

should have considered the lack of comments against the reinstatement of the exclusion.

*Reinstatement Notice*, 87 Fed. Reg. at 17381.

Finally, generalized concerns about possible future administrative inefficiencies do not

excuse legal error in this administrative proceeding because the circumstances of this case are rare.

Natural Choice requested to withdraw its comment against the reinstatement of an exclusion after

another party filed a court appeal questioning the comment's accuracy.  Natural Choice's comment

was the entire factual basis for USTR's initial decision.  *See Remand Results* at 5.  Rather than

creating a hypothetical "perpetual comment period" that applies to all future agency action, by

remanding to USTR under these facts, the Court would simply be ordering USTR to address an

anomalous situation that casts significant doubt on the basis of its initial determination.

**III.   USTR'S ATTEMPT TO JUSTIFY ITS DECISION USING NEW IMPORT DATA
         SHOULD BE REJECTED**

**A.    USTR Relies on Improper Post-Hoc Rationalization to Explain Its Decision
        Not to Reinstate the Water Cooler Exclusion.**

After providing no reasons for its initial decision not to reinstate the Water Cooler

Exclusion, USTR relied on improper post-hoc rationalization in the *Remand Results* to support its

decision.  On remand, an agency is limited to providing a fuller explanation of its previous decision

and may not introduce new reasons without engaging in new agency action.  *In re Section 301

Cases*, 570 F. Supp. 3d 1306, 1344–45 (Ct. Int'l Trade 2022) (Courts have warned agencies about

"the impermissibility of post hoc reasoning" and established constraints for "the court's review of

such reasoning provided pursuant to a remand.").  Specifically, while this Court "may remand to

the USTR to further explain its determinations, . . .  the USTR may only further explain the

justifications it has given for the {action}. . . . {i}t may not identify reasons that were not

previously given unless it wishes to 'deal with the problem afresh' by taking new agency action."
*See id.* (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908–09
(2020)).[1]

In its initial decision not to reinstate the Water Cooler Exclusion, USTR appeared to rely

on an "evaluation of the factors" to reinstate exclusions for other products, but provided ***no reasons***

for why it decided ***not*** to reinstate other exclusions, including the Water Cooler Exclusion. *See*

*generally Reinstatement Notice*, 87 Fed. Reg. 17380. USTR stated that it "consider{ed} public

comments submitted in response to the October 8 notice, and the advice of advisory committees,

the interagency Section 301 Committee, and the White House COVID-19 Response Team." But

USTR did not explain how it considered and weighed the evidence set forth in any of these sources.

*See generally, Reinstatement Notice* 87 Fed. Reg. 17380. In particular, it did not state that it relied

on—or even considered—U.S. Census Data on imports of water coolers when refusing the

reinstate the Water Cooler Exclusion.

On remand, USTR provided new reasons for its determination not to reinstate the Water

Cooler Exclusion. In particular, it added an analysis of U.S. import trends for water coolers,

relying in large part on U.S. Census Data. *Remand Results* at 7–8. USTR's new reasons on remand

are improper post-hoc rationalization.[2] This Court must disregard the post-hoc reasoning provided

by USTR in the *Remand Results*. *See In re Section 301 Cases*, 570 F. Supp. 3d at 1344–45.

---

[1] *See also Dep't of Homeland Sec.*, 140 S. Ct. at 1908–09 ("When an agency's initial explanation 'indicate[s] the determinative reason for the final action taken,' the agency may elaborate later on that reason (or reasons) but may not provide new ones. . . . Alternatively, the agency can 'deal with the problem afresh' by taking *new* agency action. . . . An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action. . . . ***The basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted***.") (citations omitted) (emphasis added).

[2] Should USTR wish to consider new reasons for not reinstating the Water Cooler Exclusion, it must initiate a new agency action by following the appropriate procedures, including requesting

**B.      USTR Failed to Consider Relevant Data in Making its Factual Determinations Regarding U.S. Import Trends.**

For the reasons discussed above, the Court should disregard USTR's attempt to rely on U.S. import data as impermissible post-hoc reasoning.  However, even if the Court were to consider this data, a review of the data in ***absolute*** terms reveals that USTR's conclusions that there have been meaningful "changes in the global supply chain since September 2018 with respect to" water coolers, and that there is "greater availability" of water coolers from third country sources, are not supported by the import data.  USTR's decision to rely on percentage changes and to completely ignore absolute changes in U.S. imports creates the incorrect impression that there has been a meaningful shift in global supply chains for water coolers since 2018, when, in fact, shifts in water cooler imports into the U.S. during this time were primarily driven by growth in Chinese imports.  Instead of conducting the more relevant analysis of the data (*i.e.* reviewing the absolute changes in imports) and including that evidence in its analysis, USTR simplistically focused on a percentage-based analysis that masked the small nature of any shifts to third country sources.  *See* U.S. Census Data, imports for consumption under 8418.69.0120 (2018-2021), available at https://dataweb.usitc.gov/.

- USTR notes that "the volume of imports under subheading 8418.69.0120 increased by more than 42 percent from 2018 to 2021, with the share of imports from third country sources increasing from 11 percent of total imports in 2018 to 15 percent of total imports in 2021." *Remand Results* at 7.  However, in absolute terms, the volume of imports of water coolers increased by 605,677 from 2018 to 2021.  Of that, 455,790 units—or more than 75% of the increase—were from China.  Only 149,887 units were from third country sources.

---

public comment.  *See Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1313 (Ct. Int'l Trade 2022) (remanding determination back to the agency, and noting that "{b}ecause {the agency} did not initially offer any explanation of its reasoning, the Court doubts very much whether {the agency} can in fact provide a 'fuller' explanation of its decision . . . in this case. A new decision based on current conditions is most likely required.").

- USTR notes that "{i}n 2021, following the expiration of the exclusion the quantity of imports from third countries increased by 68 percent, while imports from China decreased by 3 percent." *Remand Results* at 7–8. In absolute terms, a 68 percent increase in third country imports translates to only 121,704 more units from 2020 to 2021. Meanwhile, a mere 3 percent decrease in imports from China from 2020 to 2021 amounts to a difference of 67,521 units. In other words, in 2021 even with the 68% increase in third country imports, the volume of Chinese imports was more than *five times* larger than the volume of third country imports. Moreover, the total value of Chinese units imported actually *grew* by 3% from $175,539,334 in 2020 to $180,406,189 in 2021.

- USTR also notes that "imports from Malaysia, South Korea, and Mexico, the largest third country sources, increase{d} by nearly 100 percent and gr{ew} from 9 percent of total imports to 12 percent of total imports." *Remand Results* at 8. While Malaysian and Mexican imports did grow from 2018 to 2021 (from 12,498 to 123,886, and 35,339 to 62,867 units, respectively), Korean imports decreased from 83,634 units in 2018 to 69,146 units in 2021. Meanwhile, imports from some of the other "largest third country sources" named by USTR, *see Remand Results* at 8, actually import very few units in absolute terms. For example, Poland and Italy imported only 2,304 and 5,000 units in 2021 respectively. Finally, other third country imports from Canada, Japan, Hong Kong, Brazil, Taiwan, Netherlands, and Germany declined from 2018 to 2021 in terms of quantity and value.

As demonstrated above, when examining the underlying U.S. import data in absolute terms, the flaws in USTR's analysis become clear. Even if the Court considers USTR's post-hoc rationalization, USTR's decision to focus solely on percentage changes rather than the more relevant absolute changes in U.S. imports led to USTR's erroneous determination that there have been meaningful "shifts in global supply chains for products covered by the Water Cooler Exclusion" since 2018 and that there is "greater availability" of water coolers from third country sources. In other words, USTR's analysis creates the incorrect impression that water coolers from third countries are being substituted for water coolers from China, but the absolute numbers reveal that any changes have been very small. Thus, USTR has failed to "examine the *relevant* data" and "articulate a satisfactory explanation" based on this data for its decision not to reinstate the Water Cooler Exclusion. *Motor Vehicle Mfrs.*, 463 U.S. at 43 (emphasis added).

**IV.    USTR MISAPPLIED ITS OWN FACTOR IN REACHING ITS DETERMINATION**

In its initial request for comments on the reinstatement of Section 301 exclusions, including the Water Cooler Exclusion, USTR said it "will consider whether or not ***reinstating*** the exclusion will impact or result in severe economic harm to the commenter or other U.S. interests. . . ." *Request for Comments on the Possible Reinstatement of Certain Exclusions in the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 86 Fed. Reg. 56,345, 56,347 (Oct. 8, 2021) (emphasis added).  And in its original determination not to reinstate the Water Cooler Exclusion, USTR considered that factor.  *Reinstatement Notice*, 87 Fed. Reg. at 17381.  On remand, USTR flipped the inquiry, determining that "the record demonstrates that ***not reinstating*** the exclusion will ***not*** cause severe economic harm to commenters or other U.S. interests." *Remand Results* at 10.  In other words, USTR initially asked: Will reinstating the exclusion cause severe economic harm.  But USTR answered a different question: Will ***not*** reinstating the exclusion cause severe economic harm?  In addition, USTR failed to "consider whether or not reinstating the exclusion would impact or result in severe economic harm" to one commenter in particular—Natural Choice—the only alleged domestic producer who submitted a comment opposing reinstatement of the exclusion.[3]

Therefore, USTR's determination was "not based on a consideration of the relevant factors" it articulated for deciding whether to reinstate an exclusion request, *see Motor Vehicle*

---

[3] As another example of USTR's flawed reasoning, USTR points to an increase in gross revenues for some commenters from 2020 to 2021, after the Water Cooler Exclusion expired as evidence that these commenters were not experiencing "severe economic harm." *Remand Results* at 10–11. Notably, these increases occurred when companies were increasing purchases from China. *Remand Results* at 11.  It is likely that gross revenue increased because these companies had to charge consumers higher prices to account for the Section 301 tariff now in place for water coolers from China.  An increase in revenue does not necessarily mean that the company experienced an increase in profits, or that the company is not suffering economic harm.

*Mfrs.*, 463 U.S. at 43 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416

(1971)), and thus failed to "fairly apprise interested parties of the issues involved" in its

reinstatement decision, violating the rulemaking requirements of the APA pursuant to 5 U.S.C.

§ 553(b), *see In re Section 301 Cases*, 570 F. Supp. 3d at 1345 (citing *Mid Continent Nail Corp.

v. United States*, 846 F.3d 1364, 1373 (Fed. Cir. 2017)). These errors render its determination both

arbitrary and capricious, and unlawful.

## V.   CONCLUSION

For the foregoing reasons, Primo Water requests that the Court reject USTR's *Remand

Results* and remand this case back to USTR with instructions to (1) consider Natural Choice's

request to withdraw its comment, and (2) limit its reinstatement determination to information and

reasons provided in its initial determination.

Respectfully submitted,

WHITE AND CASE LLP

 /s/ David E. Bond
David E. Bond
Frank Hogue
Cristina Cornejo

WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to DS Services of America, Inc., d/b/a Primo
Water North America

Date: February 27, 2023

CERTIFICATE OF COMPLIANCE

I, David E. Bond, certify that the attached brief complies with the word limitation requirement, as stated in the Standard Chambers Procedures. The word count for Primo Water's Comments in Opposition to USTR's Remand Results, as computed by the White & Case word processing system (Microsoft Word 2016), is 2,983.


                                      /s/ David E. Bond
                                     David E. Bond