## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| DS SERVICES OF AMERICA, INC.,<br>DBA PRIMO WATER NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-157 |
| | ) | |
| THE UNITED STATES,<br>OFFICE OF THE UNITED STATES<br>TRADE REPRESENTATIVE;<br>KATHERINE TAI, U.S. TRADE REPRESENTATIVE;<br>U.S. CUSTOMS & BORDER PROTECTION;<br>CHRIS MAGNUS, U.S. CUSTOMS & BORDER<br>PROTECTION COMMISSIONER, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Upon consideration of plaintiff's comments regarding the Office of the United States Trade Representative's (USTR) Remand Results, (Dec. 14, 2022), defendants' response thereto, and all other pertinent papers, it is hereby

ORDERED that USTR's Remand Results are sustained; and it is further

ORDERED that judgment will enter in favor of defendants.


_____
CHIEF JUDGE

Dated: _____, 2023
       New York, NY

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| DS SERVICES OF AMERICA, INC., <br> DBA PRIMO WATER NORTH AMERICA, INC., <br><br>       Plaintiff, <br><br><br><br>       v. <br><br> THE UNITED STATES, <br> OFFICE OF THE UNITED STATES <br> TRADE REPRESENTATIVE; <br> KATHERINE TAI, U.S. TRADE REPRESENTATIVE; <br> U.S. CUSTOMS & BORDER PROTECTION; <br> CHRIS MAGNUS, U.S. CUSTOMS & BORDER <br> PROTECTION COMMISSIONER, <br><br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Court No. 22-157 <br><br> **Public Version** <br><br> Business Proprietary <br> Information Removed <br> from Pages 7, 8, 17, 18, <br> and 19 |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S COMMENTS ON THE REMAND DETERMINATION

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

JUSTIN R. MILLER
Attorney-In-Charge,
International Trade Field Office

OF COUNSEL:

PHILIP BUTLER
Associate General Counsel
MEGAN GRIMBALL
Associate General Counsel
RACHEL HASANDRAS
Assistant General Counsel
Office of General Counsel
Office of the U.S. Trade Representative
600 17th Street N.W.
Washington, D.C. 20508

PAULA SMITH
Assistant Chief Counsel
EDWARD MAURER
Deputy Assistant Chief Counsel
VALERIE SORENSEN-CLARK
Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

April 28, 2023                                  *Attorneys for Defendants*

# **TABLE OF CONTENTS**

BACKGROUND ......................................................................................................2

I.  USTR's Initial Decision Not To Reinstate The Water Cooler Exclusion And Primo Water's Complaint ................................................................................2

II.  USTR's Request For A Voluntary Remand And Remand Results..........................5

ARGUMENT ..........................................................................................................9

I.  Standard Of Review ..................................................................................10

II.  USTR's Decision Not To Reinstate The Water Cooler Exclusion Is Reasonable And Should Be Sustained ...............................................................................11

   A.  USTR Elected To Take New Action And, Thus, Was Free To Provide New Reasons Supporting Its Decision ...................................................................11

   B.  USTR Was Free To Consider Additional U.S. Import Data When Making A New Determination ..............................................................................13

   C.  Primo Water Has Not Satisfied Its Burden Of Proof For Setting Aside Agency Action ......................................................................................15

      1.  USTR Did Not Ignore Absolute Data .......................................................15

      2.  USTR Evaluated Economic Harm In Accordance With The Criteria Set Forth In The *October 2021 Request For Comments*..................................17

   D.  Primo Water's Focus On Natural Choice's Comment Is Misplaced ...............20

CONCLUSION.......................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alaska Dep't of Envts. Conservation v. EPA*,
   540 U.S. 461 (2004) ........................................................................................... 21

*American Relocation Connections, LLC v. United States*,
   789 F. App'x 221 (Fed. Cir. 2019) .................................................................... 22

*Bannum Inc. v. United States*,
   404 F.3d 1346 (Fed. Cir. 2005) .......................................................................... 22

*Cayuga Nation v. Zinke*,
   302 F. Supp. 3d 362 (D.D.C. 2018) .................................................................... 15

*Citizens Telecomm. Co. v. FCC*,
   901 F.3d 991 (8th Cir. 2018) ................................................................... 16, 17, 20

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ........................................................................................... 10

*Cytori Therapeutics, Inc. v. FDA*,
   715 F.3d 922 (D.C. Cir. 2013) ............................................................................ 22

*Department of Homeland Security v. Regents of the University of California*,
   140 S. Ct. 1891 (2020) ................................................................................. 10, 11

*FCC v. Fox Television Stations*,
   556 U.S. 502 (2009) .................................................................................... 11, 19

*Fisher v. Pension Guaranty Benefit Corp.*,
   994 F.3d 664 (D.C. Cir. 2021) ..................................................................... 12, 13

*Green Country Mobilephone, Inc. v. FCC*,
   765 F.2d 235 (D.C. Cir. 1985) ........................................................................... 22

*In re Section 301 Cases*,
   570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ..................................................... 11

*Int'l Indus., Ltd. v. United States*,
   311 F. Supp. 3d 1325 ......................................................................................... 16

*Level the Playing Field v. FEC*,
   381 F. Supp. 3d 78 (D.D.C. 2019) .................................................................... 15

*Medtronic, Inc. v. Daig Corp.*,
  789 F.2d 903 (Fed. Cir. 1986)..................................................................... 20

*Miami Free Zone Corp. v. Foreign-Trade Zones Bd.*,
  136 F.3d 1310 (Fed. Cir. 1998)................................................................... 10

*Motor Vehicles Manufacturers Ass'n v. State Farm Auto Mut. Ins. Co.*,
  463 U.S. 29 (1983).................................................................................... 11

*Natural Resources Defense Council v. National Marine Fisheries Serv.*,
  71 F. Supp. 3d 35, (D.D.C. 2014)............................................................... 16

*Niobrara River Ranch, LLC, v. Huber*,
  373 F.3d 881 (8th Cir. 2004) ..................................................................... 15

*PAM S.P.A. v. United States*,
  463 F.3d 1345 (Fed. Cir. 2006)................................................................... 22

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F. 3d 1312 (Fed. Cir. 2006)................................................................. 19

*Texas v. Biden*,
  142 S. Ct. 2528 (2022)........................................................................ 12, 13

*U.S. Steel Grp. v. United States*,
  96 F.3d 1352 (Fed. Cir. 1996)................................................................... 17

*Van Hollen, Jr. v. FEC*,
  811 F.3d 486, 495 (D.C. Cir. 2016)............................................................. 10

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
  435 U.S. 519 (1978)............................................................................ 14, 20

**Statutes**

28 U.S.C. § 1581(i)...................................................................................... 10

28 U.S.C. § 2640(e)...................................................................................... 10

Trade Act of 1974,
  19 U.S.C. § 2411 *et seq.*............................................................................. 1

**Federal Register**

*Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 28,710 (U.S. Trade Representative June 20, 2018)............................................. 2

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 67,463 (U.S. Trade Representative Dec. 28, 2018)........................................ 2, 14

*Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
84 Fed. Reg. 70,616 (U.S. Trade Representative  Dec. 23, 2019)............................................. 3

*Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
87 Fed. Reg. 17,380 (U.S. Trade Representative Mar. 28, 2022)............................................. 4

*Procedures To Consider Requests for Exclusion of Particular Products From the Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 32,181 (U.S. Trade Representative July 11, 2018)............................................. 2

*Request for Comments Concerning the Extension of Particular Exclusions Granted Under the December 2018 Product Exclusion Notice from the $34 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
84 Fed. Reg. 58,427, 58,428 (U.S. Trade Representative Oct. 31, 2019) ............................... 14

*Request for Comments on the Possible Reinstatement of Certain Exclusions in the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
86 Fed. Reg. 56,345 (U.S. Trade Representative Oct. 8, 2021) ....................................... *passim*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| DS SERVICES OF AMERICA, INC.,<br>DBA PRIMO WATER NORTH AMERICA, INC.,<br><br>Plaintiff,<br><br><br><br>v.<br><br>THE UNITED STATES,<br>OFFICE OF THE UNITED STATES<br>TRADE REPRESENTATIVE;<br>KATHERINE TAI, U.S. TRADE REPRESENTATIVE;<br>U.S. CUSTOMS & BORDER PROTECTION;<br>CHRIS MAGNUS, U.S. CUSTOMS & BORDER<br>PROTECTION COMMISSIONER,<br><br>Defendants. | Court No. 22-157<br><br>**Public Version**<br><br>Business Proprietary<br>Information Removed<br>from Pages 7, 8, 17, 18<br>and 19 |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S COMMENTS
## ON THE REMAND DETERMINATION

Defendants, the United States *et al.*, respectfully submit this response to the comments filed by plaintiff DS Services of America, Inc., d/b/a Primo Water of North America (Primo Water) (Pl. Cmts.), ECF No. 41, on the Office of the United States Trade Representative's (USTR) Remand Results (Remand), ECF Nos. 29-30.

As discussed below, we respectfully request that the Court sustain the Remand and enter judgment for the United States because USTR's decision on remand, in which it declined to reinstate the exclusion from duties pursuant to Section 301 of the Trade Act of 1974 (the Trade Act), 19 U.S.C. § 2411 *et seq.* (Section 301), of water coolers classified under Harmonized Tariff

Schedule of the United States (HTSUS) subheading 8418.69.01 (Water Cooler Exclusion) for the time period October 12, 2021, through December 31, 2022, is reasonable and is based on a consideration of the relevant factors.  Also, it was within USTR's discretion to decline to strike the comment filed by Natural Choice Corporation (Natural Choice).

## BACKGROUND

I.     **USTR's Initial Decision Not To Reinstate The Water Cooler Exclusion And Primo Water's Complaint**

Primo Water claims to be an importer of water coolers that are subject to Section 301 duties under subheading 9903.88.01, HTSUS.  Remand at 2 (citing *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (U.S. Trade Representative June 20, 2018) (*June 2018 Notice of Intent*)).

In July 2018, USTR invited the public to request that particular products be excluded from additional duties.  Remand at 2 (citing *Procedures To Consider Requests for Exclusion of Particular Products From the Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 32,181 (U.S. Trade Representative July 11, 2018) and Compl., ¶ 18).  Exclusions were product specific, covering certain products within a 10-digit subheading, or covered an entire HTSUS 10-digit subheading.  Remand at 2.  On December 28, 2018, USTR granted a 10-digit exclusion covering drinking water cooler products entering the United States under HTSUS subheading 8418.69.0120.  Remand at 3 (citing *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,*

83 Fed. Reg. 67,463 (U.S. Trade Representative Dec. 28, 2018) (*Dec. 2018 Exclusion Notice*) and Compl., ¶ 18).

On December 23, 2019, USTR extended numerous exclusions, including the Water Cooler Exclusion.  Remand at 3 (citing *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 70,616 (U.S. Trade Representative  Dec. 23, 2019) (*Dec. 2019 Extension Notice*) (granting an extension of the exclusion for HTSUS subheading 8418.69.0120) and Compl., ¶ 19).  The Water Cooler Exclusion expired on December 28, 2020.  *Id.*

On October 8, 2021, USTR announced that it was considering the possible reinstatement of previously extended exclusions and invited the public to comment on whether to reinstate particular exclusions, including the Water Cooler Exclusion.  Remand at 3 (citing *Request for Comments on the Possible Reinstatement of Certain Exclusions in the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 86 Fed. Reg. 56,345 (U.S. Trade Representative Oct. 8, 2021) (*October 2021 Request for Comments*) and Compl., ¶ 20).  USTR stated that the "focus" of its evaluation would be on "whether, despite the imposition of additional duties beginning in September 2018, the particular product remains available only from China."  *October 2021 Request for Comments*, 86 Fed. Reg. at 56,346.  In considering this factor, USTR requested that commenters address: (1) "Whether the particular product and/or a comparable product is available from sources in the United States and/or in third countries"; (2) "Any changes in the global supply chain since September 2018 with respect to the particular product or any other relevant industry developments"; (3) "The efforts, if any, the importers or U.S. purchasers have

undertaken since September 2018 to source the product from the United States or third

countries"; and (4) "Domestic capacity for producing the product in the United States."  *Id.*

In addition, USTR stated that it would:

> {C}onsider whether or not reinstating the exclusion will impact or
> result in severe economic harm to the commenter or other U.S.
> interests, including the impact on small businesses, employment,
> manufacturing output, and critical supply chains in the United
> States, as well as the overall impact of the exclusions on the goal
> of obtaining the elimination of China's acts, policies, and practices
> covered in the Section 301 investigation.

*Id.*

Primo Water submitted a comment requesting reinstatement of the Water Cooler

Exclusion.  Remand at 4; P.R. 7, C.R. 7, Comments of Primo Water (Primo Water Cmts), Nov.

2, 2021.  One U.S. company, Natural Choice, filed a comment opposing the reinstatement of the

Water Cooler Exclusion, claiming that it produced such water coolers.  Remand at 4; P.R. 11,

C.R. 11, Comments of Natural Choice Corp. (Natural Choice Cmts.), Dec. 1, 2021.  On March

28, 2022, USTR reinstated 352 of the 549 previously extended exclusions.  USTR did not

reinstate the Water Cooler Exclusion.  Remand at 4 (citing *Notice of Reinstatement of Certain*

*Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 87 Fed. Reg. 17,380 (U.S. Trade Representative Mar. 28, 2022)

(*March 2022 Notice of Reinstating Certain Exclusions*)).  The reinstated product exclusions

applied retroactively to October 12, 2021, and extended through December 31, 2022.  *Id.*

On May 25, 2022, Primo Water filed a timely summons and complaint (ECF Nos. 1 and

2) challenging USTR's decision not to reinstate the Water Cooler Exclusion.  Remand at 4-5

(citing *Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices*

*Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 17,380

(USTR Mar. 28, 2022)).  In its complaint, Primo Water contends that USTR violated the

Administrative Procedure Act (APA) because it did not provide an explanation for its decision

not to reinstate the Water Cooler Exclusion and that the decision was otherwise arbitrary and

capricious and unsupported by substantial evidence.  Remand at 5 (citing Compl., ¶¶ 25-29).  As

part of its contention, the complaint calls into question whether Natural Choice produces water

cooler products covered by the Water Cooler Exclusion.  Remand at 5 (citing Compl., ¶ 22).

Also, on July 14, 2022, Natural Choice submitted a letter to USTR, noting that upon further

examination, it wished to withdraw its comment opposing the reinstatement of the exclusion.

Remand at 5 (citing P.R. 17, Letter from Natural Choice requesting to Withdraw Dec. 1, 2021

Comment, July 14, 2022 (Natural Choice Withdrawal Request)).

## II.      **USTR's Request For A Voluntary Remand And Remand Results**

On August 31, 2022, we filed an unopposed motion requesting that the Court remand this

matter to USTR so that it could "reconsider its final determination not to reinstate the {Water

Cooler Exclusion} from duties" pursuant to Section 301.  Defendants' Unopposed Motion for a

Voluntary Remand, Aug. 31, 2022, ECF No. 23 (Gov. Mot.) at 1.  In our motion, we explained

that if the Court granted our motion, USTR intended to reconsider Primo Water's reinstatement

request and that it would "*issue a new determination*" in which it would either grant or deny the

request to reinstate the exclusion.  *Id.* at 2 (emphasis added).  On September 1, 2022, the Court

entered an order granting our request.  Order, Sept. 1, 2022, ECF No. 24.

Subsequently, on December 14, 2022, USTR filed its remand results in which it stated

that it had reconsidered its decision not to reinstate the Water Cooler Exclusion and had decided

not to reinstate the exclusion.  Remand at 4-13.  USTR also provided an explanation of the

reasons supporting its new decision.  *Id.*

First, USTR explained its decision to reject Natural Choice's request to withdraw its comment from the docket.  Remand at 4-5 (citing P.R. 17, Natural Choice Withdrawal Request; P.R. 18, Letter from USTR to Natural Choice, Sept. 26, 2022 (USTR Letter to Natural Choice); P.R. 19, Natural Choice Submission in Response to USTR Request (Natural Choice Response), Nov. 21, 2022)).  USTR stated that it had asked Natural Choice to further explain why it wanted to withdraw its comment.  *Id.*  In its response, Natural Choice "confirmed the accuracy" of its initial comment and stated that reinstating the Water Cooler Exclusion "would have a declining impact on its business."  Remand at 5 (citing Natural Choice Response, P.R. 19 at 1-2).  USTR also explained that its decision was guided by concerns of administrability.  Specifically, in this case, it appeared that Natural Choice had merely re-evaluated its position several months after submitting its comment.  USTR concluded that, to allow a commenter to withdraw a comment seven months after the docket closed "could result in a perpetual public comment period that would lead to administrative inefficiency and a lack of predictability."  Remand at 5.

Next, USTR addressed whether to reinstate the Water Cooler Exclusion considering the factors set forth in the *October 2021 Request for Comments*, 86 Fed. Reg. 56,345.  Remand at 6-13.  With respect to the first factor, whether "the particular product remains available only from China," after examining the public comments submitted, including reported imports, and relevant U.S. Census Data, for imports for consumption under 8418.69.0120 (2018-2021), *available at* https://dataweb.usitc.gov, USTR concluded that "the record shows that while China continues to be the dominant source for imports, there is increasing availability from third country sources and additional capacity from third countries is coming online."  Remand at 10.  USTR also found that following the expiration of the exclusion there were limited shifts in production to the United States.  Remand at 10.  USTR noted that, although "{t}hese sources may not currently

meet all U.S. demand," USTR had never stated that "this factor, standing alone, would warrant a reinstatement" and that it was satisfied that "the products covered by the exclusion are generally available outside of China and sourcing from alternative sources is increasing." *Id.*[1]

Next, USTR examined the second factor identified in its *October 2021 Request for Comments*, whether reinstating the exclusion would "result in severe economic harm to the commenter or other U.S. interests." 86 Fed. Reg. 56,346; Remand at 10-12. After examining the comments submitted, USTR concluded that "reinstating the exclusion will not cause severe economic harm to commenters or other U.S. interests." Remand at 10. In reaching this conclusion, USTR found that, of the 12 companies supporting reinstatement, five reported gross revenues of greater than $100 million and that, of those companies, products covered by the exclusion covered only a small share of their business. Remand at 10.[2] And USTR found that data submitted by the commenters showed that, following the expiration of the exclusion at the end of 2020, both the five larger companies and the seven smaller companies increased their

---

[1] In addition to the Census data, its discussion USTR cited the following record documents: █████████████████████████████████████████

[2] This section of the Remand discusses comments from seven "smaller" companies, which are identified on page 6 n.11 and consist of the following comments: ███████████████████████████████████████████████████. It also discusses comments from five "larger" companies" including: ███████████████████████████████████████████

gross revenue in the first half of 2021.  Remand at 10-11.  USTR also found that those increases

in gross revenues in 2021 occurred while the companies were increasing purchases from China.

*Id.* at 11.

In addition, USTR found that only a small number of companies that supported

reinstatement attributed drops in employment to the additional duties.  Remand at 11.  USTR

expressed skepticism of these claims because, of those companies, two reported ██████████

████████████████████████████████████████████████████

████████████████████████ ], and the third company claimed that it had reduced its

workforce as a result of the additional duties, but did not provide any further explanation.

Remand 11-12 (citing [████████████████████████████████████

██████ ).

Finally, USTR found that the comments submitted "failed to sufficiently demonstrate a

connection between a specific alleged harm that would be directly attributable to USTR not

reinstating the exclusion," and, instead, offered only claims of harm that were general and not

specific, were speculative, or identified harm because of several causes or that otherwise did not

constitute severe economic harm.  Remand at 12 (citing [████████████████████

████████████████████████████████████████████

████████████████ ]).

Accordingly, USTR decided not to reinstate the exclusion for several reasons, including

that sources outside of China had increased since 2018, that "imports from third countries {had}

grown faster and have become a larger share of total imports," and that the record did not reflect

that "the additional duties are impacting or resulting in severe economic harm to U.S. companies

or other interests."  Remand at 13.

## ARGUMENT

The Section 301 tariffs covering the products that Primo Water imports and distributes were imposed as part of "List 1" tariffs—tariffs that no one has challenged as unlawful.  Instead, Primo Water contests USTR's process for reinstating tariffs on certain products that initially were excluded based upon USTR's voluntary adoption of an exclusion process.  This is a highly discretionary process that USTR adopted to address claims of severe economic harm raised by U.S. interests.

USTR's decision on remand in which it declined to reinstate the Water Cooler Exclusion is reasonable and demonstrates a consideration of the factors identified in the *October 2021 Request for Comments*, namely whether:  (1) "the particular product remains available only from China"; and (2) reinstating the exclusion would result in "severe economic harm to the commenter or other U.S. interests."  86 Fed. Reg. at 56,346.  Specifically, USTR concluded that the record showed that there were additional sources of supply outside of China and that, although those sources were not sufficient "to meet all of U.S. demand," that "sourcing from alternative sources is increasing."  Remand at 10, 13.  USTR also concluded that the record did not support that "the additional duties are impacting or resulting in severe economic harm to U.S. companies or other interests."  Remand at 13.  These conclusions are supported by substantial evidence.  And it was well-within USTR's significant discretion to decline to strike Natural Choice's comment after Natural Choice "confirmed the accuracy of its comment."  Remand at 5.  Given that the exclusion process had involved a review of the nearly 60,000 requests and comments, USTR rightly concluded that permitting the withdrawal of the comment seven months after the docket closed based upon the commenter's "reevaluation of its decision to

submit a comment" would present significant issues of administrability, such as a perpetual comment period. *Id.*

Primo Water has not satisfied its "heavy burden" of establishing that USTR's Remand is not the product of reasoned decisionmaking. *Van Hollen, Jr. v. FEC*, 811 F.3d 486, 495 (D.C. Cir. 2016) (cleaned up). Relying on *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), Primo Water incorrectly claims that USTR's decision is flawed because it relies on "post hoc" reasoning. Pl. Cmts. at 4. This ignores that *Regents* expressly permits an agency to supply new reasons supporting its decision where, as here, the agency elects to make a new decision. And Primo Water's remaining quibbles with USTR's Remand—its disagreement with USTR's analysis of import data, the manner in which USTR analyzed economic harm, and USTR's conclusion that a perpetual remand process would result in administrative inefficiencies—constitutes at most subjective disagreement with USTR's reasoning and an attempt to substitute its judgement for that of USTR, neither of which is a basis for setting aside the Remand. Thus, none of Primo Water's objections carries its burden of establishing that the Remand violates the APA.

## I. <u>Standard Of Review</u>

This action was brought pursuant to 28 U.S.C. § 1581(i); thus, the applicable standard of review is established by section 706 of the APA. 28 U.S.C. § 2640(e); *Miami Free Zone Corp. v. Foreign-Trade Zones Bd.*, 136 F.3d 1310, 1312-1313 (Fed. Cir. 1998). Under this standard of review, the Court analyzes whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) (cleaned up). In other words, the Court examines whether the

agency's decision was the product of "reasoned decisionmaking" and was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicles Manufacturers Ass'n v. State Farm Auto Mut. Ins. Co.*, 463 U.S. 29, 43, 52 (1983); *Volpe*, 401 U.S. at 402, 416.

This standard of review is "narrow" and does not permit "a court . . . . to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. An agency decision may be found arbitrary if the agency: (1) "relied on factors which Congress has not intended it to consider"; (2) "entirely failed to consider an important aspect of the problem"; (3) "offered an explanation for its decision that runs counter to the evidence before the agency"; or, (4) "offered an explanation so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The ultimate question under this standard of review is whether the agency's action was reasonable. *FCC v. Fox Television Stations*, 556 U.S. 502, 514-15 (2009).

## II.   USTR's Decision Not To Reinstate The Water Cooler Exclusion Is Reasonable And Should Be Sustained

USTR's Remand easily satisfies the APA arbitrary and capricious standard of review.

### A.   USTR Elected To Take New Action And, Thus, Was Free To Provide New Reasons Supporting Its Decision

Primo Water wrongly maintains that USTR's Remand violates *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. at 1891 because USTR "relied on improper post-hoc rationalization" and provided "new reasons." Pl. Cmts. at 4-5 (citing *Regents* and *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1344-1345 (Ct. Int'l Trade 2022)). Unlike in *In re Section 301*, in which USTR elected to provide further explanation for its decision, here USTR elected to reconsider its prior determination and "issue a new decision." Gov. Mot. at 2 (emphasis added); Remand at 12 ("Accordingly, based on this record, the Trade Representative

*has determined* not to reinstate the Water Cooler Exclusion.") (emphasis added).  Having made a new decision, USTR was not bound by its original reasoning.

As explained in *Regents*, when a court remands a matter, the agency can either elect to provide further explanation and clarification for the reasoning contained in the prior decision, *or* it can examine the issue "afresh" and take new action so long as it complies with applicable procedural requirements.  *Id.* at 1908.  When an agency takes new action, as USTR did here, it "is not limited to its prior reasons."  *Id.* at 1908.  For example, in *Texas v. Biden*, 142 S. Ct. 2528 (2022), the district court vacated and remanded the Department of Homeland Security's (DHS) decision to suspend certain Migrant Protection Protocols (MPP) after concluding that DHS had inadequately explained that decision.  DHS elected to take new action and issued two new memoranda.  The Supreme Court upheld the new memoranda and stated that there was no problem with the fact that the DHS "returned to the drawing table" and offered new justifications that were not contained in its initial, flawed justification.  *Id.* at 2544-46.  Specifically, the Court explained that when an agency elects to take new action "the benefit is that the agency is not limited to its prior reasons in justifying its decision."  *Id.* (cleaned up).

Nor does Primo Water's purported confusion about whether USTR took new action preclude the Court from sustaining the Remand.  In *Fisher v. Pension Guaranty Benefit Corp.*, 994 F.3d 664, 670 (D.C. Cir. 2021), the appellant claimed that that the agency had elected the first *Regents* option and had provided further explanation of its original reasoning.  The Court disagreed and held that "{a}lthough its 2016 decision claimed to 'modif{y}' the 2011 decision by 'more fully responding' and 'providing a revised and more complete explanation,' its substance made clear that it was a new agency action" because it was evident from the latter decision that the agency had "dealt with appellant's appeal afresh."  *Id.* (cleaned up).  Further,

12

the Court held that the fact that the agency "did not give appellant the opportunity to submit a new appeal-letter brief or exhibits is immaterial" because the appellant had not identified any procedural irregularities. *Id.*

Similar to *Fisher*, here the Remand evidences that USTR took new action. Gov. Mot. at 2. Specifically, USTR examined the submitted comments and publicly available U.S. import data in light of the factors identified in the *October 2021 Request for Comments*, 86 Fed. Reg. 56,345, and made a new decision. Remand at 7, 12. For example in the section titled "Determination" USTR stated "{b}ased on the record before the Trade Representative in this redetermination, the Trade Representative has determined that the Water Cooler Exclusion does not warrant reinstatement." Remand at 7; *see also* Remand at 12 ("Accordingly, based on this record, the Trade Representative has determined not to reinstate the Water Cooler Exclusion."). Thus, as in *Fisher*, USTR's reasoning demonstrates that it "did not purport to justify a predetermined outcome" and instead "dealt with {whether to reinstate the Water Cooler Exclusion} afresh." *Fisher*, 994 F.3d at 670 (cleaned up).

## B. USTR Was Free To Consider Additional U.S. Import Data When Making A New Determination

Further, because USTR took new action, it was free to consider additional data, such as the U.S. import data. *Biden*, 142 S. Ct. at 2546 (explaining that the purpose of making a new decision is to develop new reasons that might be persuasive to a court reviewing the decision). Thus, there is no merit to Primo Water's position that the agency's consideration of this data amounts to "impermissible post-hoc reasoning." Pl. Cmts. at 6.

Nothing in the Court's remand order narrowed USTR's discretion or otherwise prohibited it from considering additional publicly available information. And it was both rational and within USTR's discretion to consult the U.S. import data. *See generally Vermont Yankee*

*Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) (explaining that it is a longstanding principle of administrative law that "the formulation of procedures {is} basically to be left within the discretion of the agencies to which Congress ha{s} confided the responsibility for substantive judgments").

Throughout the exclusion review process, USTR requested that interested parties report HTSUS codes and provide the quantity and value of imports from China and third countries. *Dec. 2018 Exclusion Notice*, 83 Fed. Reg. at 67,463-64 (requesting "the quantity and value of the Chinese-origin product that the requestor purchased in the last three years"); *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the December 2018 Product Exclusion Notice from the $34 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 58,427, 58,428 (U.S. Trade Representative Oct. 31, 2019) (*October 2019 Request for Comments*) (requesting "{t}he value and quantity of the Chinese-origin product covered by the specific exclusion request purchased in 2018, the first half of 2018, and the first half of 2019, and whether these purchases are from a related company, and if so, the name and relationship to the related company" and "{t}he value and quantity of the product covered by the exclusion purchased from the domestic and third country sources in 2018, the first half of 2018, and the first half of 2019"); *October 2021 Request for Comments*, 86 Fed. Reg. at 56,3447 (requesting "{t}he value and quantity of the Chinese-origin product covered by the specific exclusion request purchased over the last three years" and "{t}he value and quantity of the product covered by the exclusion purchased from domestic and third country sources over the

14

last three years").[3]  After asking companies to report their own import data, USTR logically also considered the imports that were publicly reported by a Government agency.

### C.  Primo Water Has Not Satisfied Its Burden Of Proof For Setting Aside Agency Action

In its comments, Primo Water raises several unfounded objections concerning USTR's analysis of the U.S. import data and USTR's analysis of severe economic harm.  Pl. Cmts. at 6-9.  These objections amount to mere disagreement with USTR's reasoning and invite the Court to substitute its judgment for USTR's.  This is "not a sufficient basis for {a court} to overturn an agency decision under the APA."  *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 370 (D.D.C. 2018); *see also Niobrara River Ranch, LLC, v. Huber*, 373 F.3d 881, 885 (8th Cir. 2004) (explaining that "mere disagreement with an agency decision does not render the {agency's} decision arbitrary or capricious"); *Level the Playing Field v. FEC*, 381 F. Supp. 3d 78, 101 (D.D.C. 2019) ("That Plaintiffs or other like-minded individuals may disagree with the FEC's interpretation of these statements is not enough for the court to find that the FEC's decision is arbitrary, capricious, or contrary to law.").

#### 1.  USTR Did Not Ignore Absolute Data

Primo Water's chief objection to USTR's use of the U.S. import data is the erroneous contention that it constitutes "impermissible post-hoc reasoning," which we addressed in the preceding section of this brief.  Pl. Cmts. at 2.

---

[3] The applicable forms also document USTR's request for this information.  *See* Exclusion Request Form, *available a*t: *https://ustr.gov/sites/default/files/enforcement/301Investigations/Section%20301_Product%20Exclusion%20Request%20Form.pdf*; *see also* Exclusion Reinstatement Comment Form, *available at*: https://ustr.gov/sites/default/files/files/Notices/Section%20301%20China%20Request%20for%20Comments/Facsimile%20of%20Data%20Requested.pdf.

Nor is Primo Water correct that USTR "completely ignore{d}" the absolute data.  Pl. Cmts. at 6-7.  According to Primo Water, USTR's analysis of the percentage changes in import data (*e.g.* from 2018 to 2021 total imports under the subheading increased by more than 42 percent, but imports from third countries increased faster, increasing from 11 percent of total imports in 2018 to 15 percent of total imports in 2021, and following the expiration of the exclusion at the end of 2020, in the first six months of 2021, imports from third countries increased by 68 percent) overstates the absolute value of product available from third country sources and changes in global supply chains.  Pl. Cmts. at 7.  But this ignores USTR's findings. In examining whether products covered by the exclusion remained available only from China, USTR found that the record showed "that there had been at least modest shifts in global supply chains."  Remand at 7.  USTR noted that while "China continues to be the dominant source for imports, there is increasing availability from third country sources and additional capacity in third countries is coming online."  Remand at 10.  Addressing limited availability of the product outside of China and the inability of other sources to meet all of U.S. demand, USTR explained that "these additional sources may not currently meet all of U.S. demand, but USTR did not state that this factor, standing alone, would warrant a reinstatement."  *Id.*  (internal footnote omitted). Rather, the *October 2021 Request for Comments* stated USTR would examine whether a product remains available only from China.  And here, the record demonstrates that the products covered by the exclusion are "generally available outside of China and sourcing from alternative sources is increasing."  Remand at 10 (footnote omitted); *see also October 2021 Request for Comments*, 86 Fed. Reg. at 56,346; *see generally Int'l Indus., Ltd. v. United States*, 311 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) (recognizing that "'{c}ertain decisions, such as the weight to be assigned a

particular piece of evidence, lie at the core of that evaluative process'") (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996)).

Importantly, USTR did not rely exclusively on U.S. import data; it also examined the company-submitted data in making the finding regarding availability, noting that several companies reported an ability to shift production to domestic or other alternative sources or reported pending shifts.  Remand at 8-9 (citing, *e.g.*, [███████████████████████████ ███████████████████████████████████████████████████████████]).

Primo Water ignores this portion of USTR's discussion entirely.  Thus, although Primo Water may disagree with USTR's analysis and would have approached the data differently, its subjective disagreement with the manner in which USTR analyzed the data is not a basis for setting aside USTR's decision.  *Citizens Telecomm. Co. v. FCC*, 901 F.3d 991, 1010 (8th Cir. 2018) (stating that "{p}etitioners may reasonably disagree with the FCC on what the evidence shows . . . but their disagreement is no basis for finding the FCC's interpretation of a conflicting record to be arbitrary and capricious"); *see also Natural Resources Defense Council v. National Marine Fisheries Serv.*, 71 F. Supp. 3d 35, 55 (D.D.C. 2014) (explaining that "{w}here there is room for disagreement, the court may not substitute its judgment for that of the agency") (cleaned up).

### 2. USTR Evaluated Economic Harm In Accordance With The Criteria Set Forth In The *October 2021 Request For Comments*

There is also no merit to Primo Water's contention that USTR "misapplied its own factor in reaching its determination" on whether severe economic harm would result if the Water Cooler Exclusion was not reinstated.  Pl. Cmts. at 8.  Contrary to Primo Water's assertions, USTR adhered to the criteria in the *October 2021 Request for Comments*.

In raising this argument Primo Water relies upon a flawed interpretation of USTR's *October 2021 Request for Comments*.  In this notice, USTR stated that:  "{i}n addition, USTR will consider whether or not reinstating the exclusion will impact or result in severe economic harm to the commenter or other U.S. interests……"  86 Fed. Reg. at 56,346.  This language conveys that USTR was evaluating whether "reinstating" the exclusion or "not reinstating" the exclusion would cause severe economic harm.  Nothing precluded USTR from finding that "not reinstating" the exclusion would *not* cause severe economic harm.

Nor does Primo Water's subjective preference for a more "pro-reinstatement" approach establish that USTR acted arbitrarily.  Pl. Cmts. at 8-9.  Again, Primo Water avoids that USTR examined the evidence placed on the record, including the commenters' gross revenues, claims of decreases in employment due to the imposition of the tariffs, and other claims of harm, and explained why the examined evidence was either not persuasive or otherwise "appear{ed} to contradict claims that the additional duties were causing severe economic harm."  Remand at 11-13 (citing, *e.g.*, [████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████]).  Specifically, USTR explained that the record reflected that, despite the expiration of the exclusion, several companies reported increases in gross revenues *and* that they were increasing their purchases from China, which USTR found "would indicate that the additional duties are not causing the companies severe economic harm."  Remand at 11.  USTR also found that claims of decreases in employment did not establish severe economic harm.  *Id.*  It explained that, of the companies supporting reinstatement only three claimed drops in employment that were related to additional duties, which USTR found unpersuasive because all three companies reported [██████████████

purchases of water coolers from China, which was inconsistent with the claims by two of the companies that drops in employment were a result of reductions in demand]. *Id.* And USTR explained that the remaining claims of harm "failed to sufficiently demonstrate a connection between a specific alleged harm that would be directly attributable to USTR not reinstating the exclusion." Remand at 12.

Primo Water's only objection to this analysis is buried in a footnote in which it speculates that gross revenues *may* have increased because "these companies had to charge consumers higher prices to account for the Section 301 tariff now in place for water coolers from China." Pl. Cmts. at 8. The United States Court of Appeals for the Federal Circuit has recognized that "arguments raised in footnotes are not preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F. 3d 1312, 1320 (Fed. Cir. 2006). In any event, Primo Water's speculation does not establish that USTR's conclusion that the harm to companies was not sufficiently severe to warrant reinstating the Water Cooler Exclusion was unreasonable. *Fox Television*, 556 U.S. at 514-15 (explaining that the ultimate question under the arbitrary and capricious standard of review is whether the agency's action was reasonable); *Citizens Telecomm. Co.*, 901 F.3d at 1010 (stating that "disagreement is no basis for finding the FCC's interpretation of a conflicting record to be arbitrary and capricious"). Further, USTR did not rely exclusively on statistics regarding gross revenue -- it also examined purchases from China after the exclusion expired, which, despite Primo Water's claims of severe economic harm due to additional tariffs, showed

[██████████████████████████████████████████████████████

███████], as well as other data provided in supporting other claims of significant harm. Remand at 11-12.

Finally, Primo Water is wrong that USTR failed to consider whether it would harm

Natural Choice if the exclusion was reinstated.  Pl. Cmts. at 8.  Contrary to Primo Water's

assertions, USTR *did* consider the harm to Natural Choice.  Remand at 5.  USTR cited Natural

Choice's response to USTR's request for further explanation in which it stated that its business

was "largely centered on filtered water coolers" which was "continuing to grow in contrast to

bottled water coolers" and that "the removal of {the Section 301 tariffs} would have a

significantly declining impact on its business."  Natural Choice Response, P.R. 19, at 2.  In any

event, given Natural Choice's comment opposing reinstatement and USTR's finding that

submitted comments failed to establish that not reinstating the exclusion would cause severe

economic harm, additional consideration of Natural Choice's comment was not necessary.

Remand at 11.

### D.  Primo Water's Focus On Natural Choice's Comment Is Misplaced

Finally, there is no merit to Primo Water's position that USTR "improperly rejected

Natural Choice's request to withdraw its comment."  Remand at 2-4.  As discussed above, absent

some specific statutory requirement, agencies generally possess the discretion to establish their

own internal procedures.  *Vermont Yankee Nuclear Power Corp.*, 435 U.S. at 524.

Primo Water erroneously claims that USTR abused its discretion because it did not

discuss the products advertised on Natural Choice's website, evidence Primo Water presented to

call into question whether Natural Choice produced products covered by the exclusion.  Pl.

Cmts. at 2-3.  Even if USTR did not specifically discuss Primo Water's evidence, this does not

establish that USTR abused its discretion or show that the Remand is arbitrary.  USTR is

presumed to have considered all the issues and all the evidence in the record in making its

decision.  *Cf. Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume

that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). Again, the fact that there is conflicting evidence in the record does not establish that USTR abused its discretion or acted arbitrarily in making its determination. *Citizens Telecomm*, 901 F.3d at 1010 (stating that disagreement about what the evidence shows is not a basis for finding arbitrary and capricious action).

Here, USTR considered Natural Choice's request to withdraw its comment, examined the record evidence, and explained why it declined to strike it from the record. Remand at 4-5. Specifically, USTR explained that, following the filing of Natural Choice's complaint, USTR sought additional information regarding why Natural Choice wanted to withdraw its comment months after submitting it. P.R. 18, USTR Letter to Natural Choice. In its response, Natural Choice explained that it believed that it manufactured products that "if imported, would be covered by the Water Cooler Exclusion" and that it disagreed with certain statements in Primo Water's complaint. P.R. 19, Natural Choice Response, at 1-2. Also, Natural Choice explained that its "filtered water cooler{}" business had grown such that if the tariffs on water coolers were eliminated "it would have a significantly declining impact on its business." *Id.*; Remand at 4-5. Thus, it is reasonably discernible from USTR's discussion that it considered all the evidence and was satisfied that Natural Choice stood by its comment and that its statements about its business were accurate. Remand at 5; *Alaska Dep't of Envts. Conservation v. EPA*, 540 U.S. 461, 497 (2004) (explaining that under the APA an agency's decision should be upheld so long as "the agency's path may reasonably be discerned").

USTR's comment also made clear that it was concerned about the impact of allowing the reopening of the exclusion process months after the fact and the impact that it would have on the tens of thousands of other comments that USTR had already addressed—a process which was

draining on agency resources.  Remand at 5.  Although Primo Water seeks to dismiss

"generalized concerns about possible future administrative inefficiencies," again, Primo Water's

disagreement with the agency's conclusion is not a basis for finding the agency's actions

arbitrary and capricious, particularly given the level of deference that is afforded to an agency in

setting its own internal procedures. Pl. Cmts. at 4; *cf. Cytori Therapeutics, Inc. v. FDA*, 715 F.3d

922, 927 (D.C. Cir. 2013) (declining to "second-guess" the agency's judgment under the

arbitrary and capricious standard of review); *Green Country Mobilephone, Inc. v. FCC*, 765 F.2d

235, 237 (D.C. Cir. 1985) (explaining that courts "will not second-guess a reasoned

determination by an agency that the advantages of rigidity outweigh the disadvantages in a given

procedural circumstance").

In any event, even if USTR should have discussed in more detail whether the products

listed on Natural Choice's website contradicted statements from Natural Choice regarding the

products it produced, Primo Water cannot avoid that USTR made clear that "whether Natural

Choice's comment is considered does not change the outcome of this remand."  Remand at 5.

As noted above, USTR found that the comments submitted supporting reinstatement of the

exclusion failed to establish that not reinstating the exclusion would cause severe economic

harm.  Remand at 11.

It is Primo Water's burden to demonstrate prejudice from the agency's error.  *Bannum*

*Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005); *see also American Relocation*

*Connections, LLC v. United States*, 789 F. App'x 221, 228 (Fed. Cir. 2019) (discussing the

APA's harmless error standard); *cf. PAM S.P.A. v. United States*, 463 F.3d 1345, 1348-49 (Fed.

Cir. 2006) (requiring a showing of "substantial prejudice" resulting from an agency's alleged

failure to follow its own procedures).  Primo Water's only claim of error is that Natural Choice's

*PUBLIC VERSION*

comment was "the only possible justification for USTR's initial decision not to reinstate the

Water Cooler Exclusion."  Pl. Cmts. at 3-4.  As explained above, in the Remand, USTR did not

seek to provide additional explanations justifying its initial decision.  Instead, it started "afresh"

and made a new decision.  As USTR explained, its decision on remand was guided by evidence

showing the availability of products from sources other than China and the lack of severe

economic harm if the exclusion was reinstated, which did not hinge on Natural Choice's

comment.  Remand at 6-13.

### CONCLUSION

For these reasons, we respectfully request that the Court sustain the Remand and enter

judgment in defendants' favor.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge,
International Trade Field Office

OF COUNSEL:

PHILIP BUTLER
Associate General Counsel
MEGAN GRIMBALL
Associate General Counsel
RACHEL HASANDRAS
Assistant General Counsel
Office of General Counsel
Office of the U.S. Trade Representative
600 17th Street N.W.
Washington, D.C. 20508

PAULA SMITH
Assistant Chief Counsel
EDWARD MAURER
Deputy Assistant Chief Counsel
VALERIE SORENSEN-CLARK
Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

April 28, 2023

/s/ Elizabeth Speck
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to this Court's order, dated January 3, 2021, ECF No. 32, defendants' counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 6,962 words.

<u>/s/ Elizabeth Speck</u>

April 28, 2023